THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

---

USCA Case No. 25-11524-D
United States District Court, Southern District of Florida
Case No.: 1:23-cv-22953-KMM

---

KEVIN COLLAZO,

Plaintiff/Appellee

v.

PROGRESSIVE SELECT INSURANCE COMPANY,

Defendant/Appellant.

---

# REPLY BRIEF OF APPELLANT PROGRESSIVE SELECT INSURANCE COMPANY

---


KRISTEN M. FIORE, BCS (25766)
**AKERMAN LLP**
201 E. Park Avenue, Suite 300
Tallahassee, Florida 32301
Telephone: (850) 224-9634
Facsimile: (850) 222-0103
kristen.fiore@akerman.com

ANTONIO D. MORIN (187860)
GARY J. GUZZI (159440)
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Telecopier: (305) 374-5095
antonio.morin@akerman.com
gary.guzzi@akerman.com

*Attorneys for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS....................................................................................i

TABLE OF CITATIONS .................................................................................. ii

RESPONSE TO APPELLEE'S STATEMENTS OF THE CASE AND THE FACTS ....................................................................................................................1

ARGUMENT.......................................................................................................3

I. **THE DISTRICT COURT ERRED BY (1) ALLOWING THE JURY—WHEN DETERMINING IF PROGRESSIVE ACTED IN BAD FAITH AT THE TIME THE CRN WAS PENDING—TO CONSIDER EVIDENCE OF POST-CRN EVENTS INCLUDING THE AMOUNT OF THE UNDERLYING POST-CRN JURY VERDICT AND JUDGMENT; AND (2) DENYING THE NEW TRIAL MOTION ON THIS BASIS** ...........................................................3

A. *The Totality of the Circumstances Standard* ...........................................5

B. *The CRN Requirement* ..........................................................................6

C. *The District Court Misapplied Bad Faith Law*........................................7

1. The trial evidence did not support the CRN's allegations of bad faith ..........................................................................10

2. No foreseeability standard applies to determine whether an insurer's settlement determination was in bad faith .....................11

3. Admission of the amount of the underlying post-CRN jury verdict and judgment was improper and unfairly prejudicial.......13

4. The district court's admission of post-CRN evidence was not harmless error and is manifestly erroneous ....................................17

CONCLUSION .......... 17

CERTIFICATE OF COMPLIANCE .......... 18

# TABLE OF CITATIONS

**Page**

**CASES**

*Berges v. Infinity Ins. Co.*,
896 So. 2d 665 (Fla. 2004) .......... 14

*Bos. Old Colony Ins. Co. v. Gutierrez*,
386 So. 2d 783 (Fla. 1980) .......... 14

*Cadle v. Geico Gen. Ins. Co.*,
838 F.3d 1113 (11th Cir. 2016) .......... 8, 13, 14

*Daniels v. Geico General Insurance Co.*,
740 F. App’x 665 (11th Cir. 2018) .......... 9, 13

*Daniels v. Geico Gen. Ins. Co.*, No.8:16-cv-00031-MSS-TBM,
2017 WL 6551153 (M.D. Fla. Nov. 1, 2017) .......... 9

*Duncan v. Geico Gen. Ins. Co.*,
729 F. App’x 900 (11th Cir. 2018) .......... 8

*Fridman v. Safeco Insurance Co. of Illinois*,
185 So. 3d 1214 (Fla. 2016) .......... 16

*Frisco v. State Farm Florida Insurance Co.*,
--- So. 3d ----, 2025 WL 3466524 (Fla. 2d DCA Dec. 3, 2025) .......... 7

*GEICO General Insurance Co. v. Paton*,
150 So. 3d 804 (Fla. 4th DCA 2014) .......... 12

*Kafie v. Northwestern Mutual Life Insurance Co.*,
834 F. Supp. 2d 1354 (S.D. Fla. 2011) .......... 8, 9, 13

*Kropilak v. 21st Century Ins. Co.*,
806 F.3d 1062 (11th Cir. 2015) .......... 4

*Landers v. State Farm Fla. Ins. Co.*,
234 So. 3d 856 (Fla. 5th DCA 2018) .......... 6, 7

*Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*,
753 So. 2d 1278 (Fla. 2000)....................4

*Vest v. Travelers Ins. Co.*,
753 So. 2d 1270 (Fla. 2000).................... 5, 15

*Williams v. State Farm Fla. Ins.*,
346 So. 3d 79 (Fla. 2d DCA 2022)....................7

*Woods v. Progressive American Insurance Co.*,
159 F.4th 837 (11th Cir. 2025) .................... 14, 15, 16

**FLORIDA STATUTES**

§ 624.155(1)(b)(1), Fla. Stat. ....................5, 6, 7, 17

**RULES AND REGULATIONS**

Fed. R. App. P. 32(a)(5)....................18

Fed. R. App. P. 32(a)(6)....................18

Fed. R. App. P. 32(a)(7)(B) ....................18

Fed. R. App. P. 32(a)(7)(B)(iii) ....................18

## RESPONSE TO APPELLEE'S STATEMENTS OF THE CASE AND THE FACTS[1]

Progressive stands on the Statement of the Case in its Principal Brief. However, a few statements in the Statements of the Case and the Facts in Collazo's Principal Brief require clarification.

First, Collazo claims "Progressive's Answer failed to articulate what would later become its central defense at trial: that evidence of post-CRN medical developments and the underlying UM jury verdict should be excluded from the bad faith analysis." [CPB 12] This is a red herring. The exclusion of evidence of post-CRN medical developments and the underlying UM jury verdict is not an affirmative defense for inclusion in an answer to a complaint. It is an evidentiary issue. Thus, Collazo's apparent attempt to imply that Progressive failed to raise in its answer an affirmative defense fails.

Second, Collazo asserts that Progressive internally valued the claim at $100,000, while only offering $44,200—citing Progressive's setting of reserves for the claim at $100,000 (or policy limits) as proof of that assertion. [CPB 19] This misconstrues the evidence. There was no testimony or evidence at trial to support

---

[1] This brief cites to district court docket entries, Progressive's Principal Brief, and Collazo's Principal Brief by .pdf page number (*e.g.*, [DE 1 at 1] refers to .pdf page 1 of docket entry 1; [PPB 1] refers to .pdf page 1 of Progressive's Principal Brief; [CPB 1] refers to .pdf page 1 of Collazo's Principal Brief).

conflating setting reserves with settlement value, or explaining precisely what reserves represent or how they are calculated.

Third, in challenging Progressive's valuation of Collazo's claim, Collazo overlooks completely the fact that the excessiveness of Collazo's ablation-related charges influenced in large part Progressive's valuation. As explained in Progressive's Principal Brief [PPB 14-15; 25-26], in the critical time frame after Collazo filed a CRN, the medical information provided to Progressive showed that Collazo obtained cervical and lumbar ablations with what appeared to Progressive to be grossly-inflated bills of $115,000 for one procedure which constituted nearly 90% of the bills submitted. [DE 92-9 at 3-7; DE 123-1 at 120:16-20] The medical information demonstrated that Collazo's complaints of pain were greatly diminished, enabling him to return to his daily activities, with no additional procedures/treatments recommended or scheduled. [DE 92-9 at 10-12; DE 123-1 at 118:4 – 119:7]

# <u>ARGUMENT</u>

**THE DISTRICT COURT ERRED BY (1) ALLOWING THE JURY—WHEN DETERMINING IF PROGRESSIVE ACTED IN BAD FAITH AT THE TIME THE CRN WAS PENDING—TO CONSIDER EVIDENCE OF POST-CRN EVENTS INCLUDING THE AMOUNT OF THE UNDERLYING POST-CRN JURY VERDICT AND JUDGMENT; AND (2) DENYING THE NEW TRIAL MOTION ON THIS BASIS.**

At the outset, Collazo claims "Progressive's appeal rests on a fundamental mischaracterization of Florida bad faith law . . . that the filing and expiration of a Civil Remedy Notice freezes the evidentiary record and cabins the jury's inquiry to a narrow snapshot in time." [CPB 24] This is incorrect. Progressive understands that under Florida law, the bad faith inquiry turns on conduct under the totality of the circumstances—from the time the claim is filed to the time the claim is resolved. *See* [PPB 35-38]. But, as Progressive explained in its Principal Brief [*Id*.], the totality of the circumstances standard does not mean that all circumstances are relevant simply because they occurred from the moment the claim was initiated until it was resolved. In other words, contrary to the district court's conclusion, the totality of the circumstances standard does not establish a *per se* admissibility standard for all facts and circumstances without regard to when those facts and circumstances were present (or presented) relative to an insurer's alleged opportunity to settle. [*Id*.]

Rather, it is the totality of the circumstances **<u>up to the time of expiration of the CRN</u>** that is potentially relevant. [*Id*.] Where, like here, there is a statutory bad

faith action that requires the claimant to provide the insurer a CRN and a 60-day safe harbor to cure the statutory violation(s) alleged in the CRN based upon the facts and circumstances exiting at the time of service of the CRN, **only those facts and circumstances existing through the expiration of the CRN are potentially relevant**. [*Id*.] This is because, like here, the settlement opportunity Collazo presented to Progressive **existed only through expiration of the CRN**. Therefore, by definition, facts and circumstances that occurred after expiration of the CRN could not have formed the basis for the statutory violation alleged in the CRN and could not have been considered by Progressive in responding to the settlement opportunity presented by the CRN. [*Id*.]

Progressive does not assert that the CRN "redefine[s] the standard of conduct, limit[s] the jury's evidentiary lens, or freeze[s] the factual record in time," as Collazo suggests. [CPB 24] In suggesting so, Collazo again ignores the nature of the bad faith claim at issue in this case. Where the bad faith claim is the improper failure to settle, as it is here, Florida law is clear that the only duty the insurer owes is to settle by using contractual sums (policy limits). *See Kropilak v. 21st Century Ins. Co.*, 806 F.3d 1062, 1070 (11th Cir. 2015) ("[A]n insurer owes no duty under Florida law . . . to its insured to enter into a consent judgment in excess of the limits of its policy."); *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1282–83 (Fla. 2000) (to cure an alleged statutory violation in response to CRN the insurer must tender

the amount owed under the express terms and conditions of the policy); *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000) (claim for bad faith pursuant to section 624.155(1)(b)1. founded on the obligation of the insurer to timely evaluate and pay benefits owed on the insurance policy). Once settlement within contractual limits is no longer possible, there can be no argument that any circumstances occurring after the settlement opportunity expired have any evidentiary value as to the determination of whether the insurer acted in bad faith in failing to settle when it could have should have done so.

At bottom, the only issue the district court should have allowed the jury to consider is whether Progressive acted appropriately with respect to information known before expiration of the 60-day CRN safe harbor period. Any subsequent information is beyond the scope of the CRN statute since it necessarily did not exist at the time the CRN was pending and neither Progressive nor a jury could know such information.

*A. The Totality of the Circumstances Standard.*

Collazo argues that the district court applied the correct legal standard to this case. But, as explained at length in Progressive's Principal Brief [PPB 22-45], the district court adopted an incorrect standard unsupported by any Florida law by essentially holding that any evidence a plaintiff in a bad faith case wants to admit is relevant without the requisite relevance and unfair prejudice analysis. In other

words, Collazo and the district court attempted to divorce "all the circumstances" contemplated under section 624.155(1)(b)(1) from the bad faith theory at issue in this case—a theory that concerns **<u>only those circumstances prior to the expiration of the settlement opportunity</u>**. [CPB 26-27; 31-32]

Collazo himself recognizes this in his Principal Brief when he explains that "totality of the circumstances" is tantamount to "the circumstances from the inception of the claim **<u>through the point at which settlement efforts fail</u>**." [CPB 27] That is precisely the point. Here, the settlement efforts (or the possibility of settlement) failed when the CRN expired. Once settlement within contractual limits is no longer possible, there can be no argument that any circumstances occurring after the settlement opportunity expired have any evidentiary value as to the determination of whether the insurer acted in bad faith in failing to settle when it could have should have done so.

*B. The CRN Requirement.*

Progressive does not claim the CRN requirement "change[s] or alter[s] the totality of the circumstances standard," as Collazo suggests. [CPB 30] Nor does Collazo assert in any way that the CRN requirement "vindicate[s] continuing efforts to delay." [*Id*. (citing *Landers v. State Farm Fla. Ins. Co.*, 234 So. 3d 856, 859 (Fla. 5th DCA 2018))] In any event, *Landers* is totally inapposite here. That case addressed whether an insured must wait for an appraisal proceeding to be completed

before filing a CRN and whether any contractual amount was due to insured where a condition precedent to payment (appraisal) had not yet occurred. *See* 234 So. 3d at 856, 860. That has nothing to do with the issue presented in this appeal.

Collazo's reliance on *Frisco v. State Farm Florida Insurance Co.*, --- So. 3d ----, 2025 WL 3466524, at *3 (Fla. 2d DCA Dec. 3, 2025) [CPB 31], is entirely misplaced. As Collazo notes, *Frisco* recognizes that "the focus in a bad faith case is not whether the insurer ultimately paid the amounts due under the policy, but whether it acted reasonably in evaluating the claim prior to the determination of damages." *Id*. (quoting *Williams v. State Farm Fla. Ins.*, 346 So. 3d 79, 81 (Fla. 2d DCA 2022)). But nothing in *Frisco* permits a court, as the district court here did, to allow a jury to consider any circumstances occurring after the settlement opportunity expired when determining whether an insurer acted in bad faith in failing to settle when it could have should have done so. Instead, *Frisco* reversed a summary judgment entered in an insurer's favor based on an alleged legal deficiency of a CRN and held that the insurer waived its right to challenge the legally-deficient CRN. 2025 WL 3466524, at *4.

*C. The District Court Misapplied Bad Faith Law.*

Consistent with the statutory scheme under section 624.155, Florida Statutes, and the 60-day safe-harbor period under the CRN process, the only relevant time period for assessing whether an insurer acted in bad faith is the 60-day CRN safe-

harbor period, the insurer's decisions during that period, and the insurer's decision based upon the facts and circumstances existing at that time. *See* [PPB 22-24 (first citing *Cadle v. Geico Gen. Ins. Co.*, 838 F.3d 1113, 1126 (11th Cir. 2016); and then citing *Duncan v. Geico Gen. Ins. Co.*, 729 F. App'x 900, 902 (11th Cir. 2018))].

Collazo fails to meaningfully distinguish the cases Progressive relied upon in its Principal Brief to show that an insurer cannot establish a claim for statutory bad faith based upon events or conduct occurring after the 60-day CRN cure period because it would be impossible for an insurer to remedy conduct or circumstances that have not yet occurred. [CPB 33-36 (citing [PPB 24-25])] Collazo argues "[t]hose decisions stand only for the unremarkable proposition that a plaintiff cannot base liability on *separate statutory violations or misrepresentation theories* that were not placed at issue in the CRN." [CPB 27] Collazo's attempt to narrow the effect of these decisions overlooks the fundamental rationale underlying these decisions, *i.e.*, the very notion of providing the insurer an opportunity to cure in response to a CRN presupposes and requires that the insurer's settlement opportunity be assessed against the facts and circumstances extant through the CRN cure period. Progressive further disagrees for the reasons set forth in its Principal Brief. *See* [PPB 24-26].

Collazo's contention that *Kafie v. Northwestern Mutual Life Insurance Co.*, 834 F. Supp. 2d 1354, 1369 (S.D. Fla. 2011), "rejected the very rule Progressive

now urges" [CPB 36], ignores what Progressive pointed out it its Principal Brief [PPB 36]—namely, that this Court in *Daniels v. Geico General Insurance Co.*, 740 F. App'x 665, 670-71 (11th Cir. 2018), albeit unpublished, rejected the proposition that a insurer's post-CRN litigation conduct is *per se* relevant and admissible. *See also Daniels v. Geico Gen. Ins. Co.*, No.8:16-cv-00031-MSS-TBM, 2017 WL 6551153, at *6 (M.D. Fla. Nov. 1, 2017) ("Plaintiff appears to argue that the question of whether Geico acted in bad faith by refusing to tender the UM limits during the CRN Cure Period is not centered on the information Geico possessed or knew during that relevant time period when making the determination. Plaintiff relies on [*Kafie*]. This reliance is misplaced.") (internal citation omitted).

Moreover, *Kafie* did not address the question of the admissibility of evidence (it addressed a motion for summary judgment/motion to strike) is factually distinguishable. The issue the court addressed in *Kafie* was the insured's argument that the insurer's post-CRN litigation conduct supported its claim that the insurer discontinued disability benefits in bad faith where the insurer maintained its denial/discontinuation of disability benefits throughout the breach of contract litigation; at no time did the insurer reinstitute disability benefits. *See* 834 F. Supp. 2d at 1367–69. In this case, Progressive actually offered the policy limits to Collazo immediately upon being informed of a subsequent surgery that had not been previously recommended or suggested and which Collazo underwent months after

the CRN expired and the Collazo filed the lawsuit. [DE 92-22; DE 123-1 at 84:21-85:3; 121:6-122:10; 122:23-124:2; 124:12-16; 201:7-16; 201:17-202:4; 202:23-203:7; 281:7-10]

1. <u>The trial evidence did not support the CRN's allegations of bad faith</u>.

Collazo devotes nearly four pages of his Principal Brief to listing evidence Collazo maintains shows that "every material allegation in Collazo's CRN was substantiated by trial evidence that occurred during the operative claims handling period." [CPB 29-33; 32] But, as set forth in Progressive's Principal Brief [PPB 41-42], this ignores several points.

*First*, Collazo's suggestion that the medical information available to Progressive during the CRN period somehow showed that Collazo's medical bills exceeded the Policy's UM limits [CPB 39-40] overlooks entirely that the evidence reflected that the vast majority of that billing was attributable to a non-surgical procedure that <u>**Collazo's own treating provider**</u> estimated to cost $35,000 rather than the nearly $120,000 invoiced by Collazo's providers (and for which Collazo was never billed). [DE 123- 1 at 267:8–269:2]

*Second*, as to Collazo's herniations and permanent injury claims [CPB 39-41], Progressive valued and offered sums that contemplated Collazo's potential general damages that would have been due or payable <u>**only upon a showing or finding of permanency**</u>. [DE 123-1 at 181:24-182:4]

*Third*, Progressive did not refuse to allocate or value future medical damages as Collazo claims. [CPB 40] In fact, at the time of the CRN, there was no existing recommendation for future medical procedure or any other treatment. And the record evidence **during the CRN period** refutes Collazo's claim that Progressive knew Collazo's injuries would continue to worsen over time and that surgery was required. [DE 123-1 at 19:4-12; 121:6-11; 122:23-123:18]

2. No foreseeability standard applies to determine whether an insurer's settlement determination was in bad faith.

Collazo states: "The question in a bad faith trial is not whether post-CRN evidence exists or is admissible, but what that evidence shows about the insurer's conduct at the time it chose not to settle." [CPB 42] But this misses the point. It is impossible for any post-CRN evidence to show what the insurer's conduct was at the time it chose not to settle. As explained above and in Progressive's Principal Brief, only those facts and circumstances existing through the expiration of the CRN are potentially relevant.

Collazo seemingly advocates for a "foreseeability" standard to determine whether an insurer's settlement determination was in bad faith. [CPB 42-44; 46] Yet, Collazo cites no authority, and Progressive is aware of none, that stands for the proposition that mere foreseeability is the relevant standard. Certainly one can argue that a surgery was a potentially foreseeable consequence, but the issue **in this case** is whether the record **at the time of the CRN** reflected that surgery was likely. It

did not. *See* [DE 92-9 at 3-7;  DE 123-1 at 19:4-12; 84:21-85:13; 119:4-12; 120:16-20; 121:6-11; 122:23-123:18; 123:23-124:2; 201:17-202:4; 202:23-203:7].

In fact, Collazo's claim that Progressive chose to act "as if the ablation procedures had resolved the underlying pathology—a gamble which was not borne out by the subsequent events (which the jury was entitled to hear about)" [CPB 46] is inaccurate and contrary to the record. As set forth in detail in Progressive's Principal Brief, the record instead shows that at the time of the CRN, Collazo was doing well post-ablation and before expiration of the CRN there was no indication that Collazo's condition had worsened. *See* [PPB 15-16; 25-26; 28-29; 38; 42 (citing DE 92-9 at 3-7;  DE 123-1 at 19:4-12; 84:21-85:13; 119:4-12; 120:16-20; 121:6-11; 122:23-123:18; 123:23-124:2; 201:17-202:4; 202:23-203:7)].

Collazo's reliance on *GEICO General Insurance Co. v. Paton*, 150 So. 3d 804, 807 (Fla. 4th DCA 2014) [CBP 43-44; 49] fails. Collazo appears to cite *Paton* to try to suggest that the appellate court in that case was sanctioning or approving the admission of the excess verdict in the UM bad faith action. [*Id.*] *Paton,* however, does not address the admissibility of the excess verdict. In fact, GEICO in that case did not challenge the admission of the verdict. *See* 150 So. 3d at 805–07. Instead, GEICO argued that the verdict was not a binding determination of damages in the bad faith trial.

3. Admission of the amount of the underlying post-CRN jury verdict and judgment was improper and unfairly prejudicial.

Allowing Collazo to introduce the underlying judgment and verdict was not only legally improper, but also caused substantial unfair prejudice to Progressive because it invited the jury to compare Progressive's valuation and settlement decisions in 2020 with a jury's ultimate assessment of Collazo's damages and injuries two years later based on drastically different information than that available to Progressive. Nothing in Florida law applies a strict liability standard against an insurer in a bad faith trial if an excess verdict was returned in the underlying case. *See generally* [PPB 26-34; 40-41].

Collazo's argument that the underlying excess verdict and judgment is the most objective evidence regarding the risk Progressive was to guard against [CPB 47] is inaccurate. In a case such as this one where the jury is not determining the amount of damages, the jury does not need to know the amount of the verdict. Rather, the jury's inquiry is limited to whether the insurer could and should have settled the claim based upon the information available to it (or reasonably available to it) at the time of the alleged settlement opportunity. *See Daniels*, 740 F. App'x at 670–71 ("Plaintiff also argues that medical evidence submitted well after the cure period raises a genuine issue of material fact and establishes Defendant's bad faith when considering the totality of the circumstances. In *Cadle,* decided after the district court's decision in *Kafie*, we rejected plaintiff's argument that 'the totality-

of-the-circumstances analysis does not require her to prove a permanent injury at the time of her settlement demand.'" (quoting *Cadle*, 838 F.3d at 1121)); *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004) (observing that the bad faith inquiry under *Boston Old Colony* concerns, in relevant part, whether the insurer gave "fair consideration to a settlement offer that is not unreasonable under the facts" (quoting *Bos. Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980))). The jury's analysis is not a post-hoc inquiry in which the jury is invited to play "Monday morning quarterback" based on information and evidence that was not available to the insure at the time it allegedly could and should have settled the claim.

This Court's recent opinion in *Woods v. Progressive American Insurance Co.*, 159 F.4th 837 (11th Cir. 2025), is dispositive on this point. In *Woods*, the plaintiff, as Collazo did here, asserted a statutory bad faith failure to settle claim regarding Progressive's failure to pay the limits of Woods' underinsured motorist ("UM") coverage and sought recovery of the underlying verdict in excess of the UM limits. *Id*. at 839. The plaintiff sought to introduce the excess verdict and judgment to the jury, and to have the jury instructed that an excess judgment existed. *Id*. at 840. This Court affirmed the district court's exclusion of evidence of the excess verdict and judgment, and refusal to instruct the jury that an excess judgment existed. *Id*. at 842–43.

In *Woods*, this Court held that because the jury was not tasked with determining damages, the underlying excess verdict and judgment were irrelevant to whether Progressive acted in bad faith and to the jury's deliberations in that regard. *Id*. at 843. This Court explained that allowing evidence of the underlying excess verdict and judgment would have "confused the jury by implying that Progressive must have acted in bad faith because the underinsured motorist jury later found in favor of Woods in excess of the policy limits. The Florida Supreme Court has rejected just this implication." *Id*. (citing *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000)). This Court also held in *Woods* that the underlying excess verdict and judgment were not part of the totality of the circumstances for the jury's consideration where the plaintiff's theory of bad faith was limited to Progressive's conduct before the underlying underinsured motorist trial. *Id*.

Here, as in *Woods*, Collazo sought admission of the underlying excess verdict and judgment where the jury was <u>not</u> tasked with determining damages and where Collazo's theory of bad faith was limited to Progressive's conduct before the underlying UM trial. *Woods* is directly on point.

Collazo unsuccessfully tries to distinguish *Woods* on the basis of the absence of a stipulation in this case that Collazo was confining his theory of bad faith to conduct before the underinsured motorist trial. This is a distinction without a difference as it was undisputed that there was no opportunity for Progressive to settle

the claim once the CRN expired and Collazo did not present any theory to the jury that Progressive engaged in "bad faith conduct" in the litigation of the uninsured motorist trial. In short, Collazo's theory at trial was in all material respects identical to that of the plaintiff in *Woods*.

Similarly unavailing is Collazo's attempt to characterize the underlying UM verdict as "illuminat[ing] the stakes of Progressive's decision-making" such that it is "central" to the jury's assessment of bad faith. [CPB 50] Indeed, Collazo's argument would render the excess verdict *per se* relevant in every bad faith failure to settle case but that is irreconcilable with the fact that the jury is not tasked with determining the amount of damages and with this Court's observation in *Woods* that "the excess judgment and jury verdict in the underinsured motorist trial were irrelevant for the jury's deliberations in the bad faith case." *Woods*, 159 F.4th at 843.

Finally, *Fridman v. Safeco Insurance Co. of Illinois*, 185 So. 3d 1214, 1224 (Fla. 2016) [CPB 48], does not support Collazo's claim that "Florida bad faith precedent recognizes that an underlying verdict plays a central role in bad faith litigation precisely because it establishes the insured's true exposure" [CPB 48]. *Fridman* simply establishes that a plaintiff can obtain an excess verdict in a UM action with that verdict establishing the damages potentially recoverable in a subsequent bad faith action. *See* 185 So. 3d at 1224–28. It does not stand for the proposition that the underlying verdict amount is relevant evidence at trial.

4. The district court's admission of post-CRN evidence was not harmless error and is manifestly erroneous.

Collazo argues "any such error in denying Progressive's motion in limine or motion for new trial was harmless." [CPB 51; 51-53] Progressive anticipated this argument in its Principal Brief where Progressive explains why the district court's admission of post-CRN evidence was not harmless error. *See* [PPB 41-43].

## CONCLUSION

WHEREFORE, for the foregoing reasons and the reasons set forth in Progressive's Principal Brief, Progressive respectfully requests that the Court reverse the Bad Faith Judgment in favor of Collazo and against Progressive, and remand for a new trial at which Collazo cannot introduce evidence of the amount of the underlying verdict and judgment in the UM Lawsuit, or evidence of post-CRN events.

Progressive also requests that the Court certify the following question of Florida law to the Florida Supreme Court:

Is evidence of events that occur post expiration of a Civil Remedy Notice, including a verdict, admissible in insurance bad faith actions concerning an uninsured/underinsured motorist insurer's alleged failure to settle under section 624.155(1)(b)1., Florida Statutes?

Respectfully submitted,

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS (25766)
**AKERMAN LLP**
201 E. Park Avenue, Suite 300
Tallahassee, Florida 32301
Telephone: (850) 224-9634
Facsimile: (850) 222-0103
kristen.fiore@akerman.com

ANTONIO D. MORIN (187860)
GARY J. GUZZI (159440)
**AKERMAN LLP**
98 SE 7th Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Telecopier: (305) 374-5095
antonio.morin@akerman.com
gary.guzzi@akerman.com

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 4,029 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS